UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WESLEY J. CROWDER and DELICIA CROWDER, husband and wife, Plaintiffs | NO.: 1:09-CV-00352 |
| v. | (JUDGE CONNER) (MAGISTRATE JUDGE PRINCE) |
| EMERSON ELECTRIC COMPANY and RIDGE TOOL COMPANY, Defendants | |
| v. | |
| CREST PRODUCTS, INC., CREST PRODUCTS, LLC, and ILLINOIS TOOL WORKS, Third-party Defendants | |

# REPORT AND RECOMMENDATION

Pursuant to an Order entered on August 4, 2010 (Doc. 47), Honorable Judge Christopher C. Conner referred the motion to dismiss (Doc. 40) of third-party defendant Illinois Tool Works[1] (ITW) to the undersigned Magistrate Judge for the purpose of preparing a Report & Recommendation.

## I. Background

ITW seeks dismissal of the third-party complaint against it based solely on the argument that its joinder was improper under Federal Rule of Civil Procedure 14 and Local Rules 14.1 and 14.3.

---

[1] The third-party complaint also names Crest Products, Inc. and Crest Products, LLC as third-party defendants, but Illinois Tool Works asserts itself as the only real party in interest.

### (A) Facts of the case

The facts as presented here are taken from the complaint filed by third-party plaintiff Emerson Electric Company (Emerson). Because the matter before the Court is procedural, the facts will be only briefly outlined.

Plaintiffs Wesley J. Crowder and Delicia Crowder (Mr. and Ms. Crowder, respectively) filed the underlying action against Emerson, alleging that Mr. Crowder suffered personal injuries while using a table saw that Emerson had manufactured. (Doc. 31, ¶ 1.) According to the complaint, a "push nut" on the saw rattled loose while the saw was in use, which caused another part of the saw to fall on the spinning blade. (*Id.* ¶ 3.) Metal fragments flew from the saw and embedded themselves in Mr. Crowder's face and eye. (*Id.*) Emerson's investigation revealed that third-party defendant ITW produced and supplied the push nut in question. (*Id.* ¶ 4.)

### (B) Procedural history

Plaintiffs filed their original complaint in the Philadelphia Court of Common Pleas on October 2, 2008. (Doc. 1, at 14–28.) Defendants Ridge Tool Company (Ridge) and Emerson removed the case to the Eastern District of Pennsylvania on October 22. (Doc. 1, at 9.) Emerson and Ridge answered the complaint on October 28. (Doc. 3.) After months of little activity in the case, Judge Edmund V. Ludwig transferred the case to the Middle District of Pennsylvania on February 23, 2009, where the case was reassigned to Judge Christopher C. Conner. (Doc. 10.)

More than a year passed as the parties conducted discovery. On March 5, 2010, Emerson and Ridge filed a motion to permit late joinder of ITW as a third-party defendant

(Doc. 27), which the Court granted in a summary order on March 8 (Doc. 29). Emerson followed up by filing a third-party complaint against ITW on March 11. (Doc. 31.)

ITW responded with a motion to dismiss and a brief in support on April 14, 2010. (Docs. 40, 42.) On April 28, treating the motion in part as if it were a statement of facts, Emerson responded, indicating admissions and denials to each of the twenty-five numbered paragraphs (Doc. 43), filing a brief in opposition as well (Doc. 44). ITW's reply brief was filed two days later, on April 30. (Doc. 45.) The motion to dismiss is now ripe for adjudication.

**II. Standard of Review**

Federal Rule of Civil Procedure 14 governs when a defendant may bring in a third party to an action:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

Fed. R. Civ. P. 14(a)(1). The Middle District of Pennsylvania has promulgated local rules that supplement the Federal Rules, generally more stringently:

> A motion by a defendant for leave to join a third-party defendant under Fed. R. Civ. P. 14(a) shall be made within three (3) months after an order has been entered setting the case for trial, or within six (6) months after the date of service of the moving defendant's answer to the complaint, whichever shall first occur.

L.R. 14.1. However, the Local Rules also provide that the requirements of Local Rule 14.1 "may be suspended upon a showing of good cause." L.R. 14.3.

Rule 14 "is designed to reduce multiplicity of litigation," and "should be construed liberally." *Hanhauser v. United States*, 85 F.R.D. 89, 90 (M.D. Pa. 1979) (citing *Tower Mfg. Corp. v. Reynolds*, 81 F.R.D. 560, 561 (W.D. Okla. 1978)). The goal is to prevent

3

the need for a defendant, after being held liable to a plaintiff, to "bring a separate action against a third individual who may be liable to defendant for all or part of plaintiff's original claim." 6 Charles Alan Wright et al., Federal Practice and Procedure § 1442 (3d ed. & supp. 2010). When a third party's liability depends on largely the same facts and law as does the defendant's in a case, joining the third-party defendant enables the court and the parties to "save the time and cost of a reduplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him, and a judgment in his favor against the third-party defendant." *Jones v. Waterman S. S. Corp.*, 155 F.2d 992, 997 (3d Cir. 1946) (quoting 1 Moore's Federal Practice 740 (1938)). Third-party practice "is intended to facilitate, not to preclude, the trial of multiple claims [that] otherwise would be triable only in separate proceedings." *U.S. v. Yellow Cab Co.*, 340 U.S .543, 556 (1951).

When a court considers whether to allow joinder of a third-party defendant after the deadlines of Local Rule 14.1, four factors guide the decision: (1) possible prejudice to the plaintiff; (2) complication of issues at trial; (3) probability of trial delay; and (4) timeliness of the motion to implead. *O'Mara Enters., Inc. v. Mellon Bank, N.A.*, 101 F.R.D. 668, 670 (W.D. Pa. 1983) (citing *Kopan v. George Washington Univ.*, 67 F.R.D. 36, 38 (D.D.C. 1975); *Judd v. Gen. Motors Corp.*, 65 F.R.D. 612, 615 (M.D. Pa. 1974)); *accord Con-Tech Sales Defined Benefit Trust v. Cockerham*, 715 F. Supp. 701, 703 (E.D. Pa. 1989) (citing *O'Mara*, 101 F.R.D. at 670). *Contra, e.g.*, *Oberholtzer v. Scranton*, 59 F.R.D. 572, 574 (E.D. Pa. 1973) (applying three factors: excusability of delay, prejudice to the third-party defendant, and delay or complication of the trial).

## III. Discussion

### *(A) ITW's argument*

Third-party defendant ITW emphasizes the sixteen-month delay from the filing of the original complaint to Emerson's filing of its third-party complaint, and stresses that ITW would suffer prejudice if required to defend in a case in which discovery progressed largely without its participation, with several important depositions having been taken without ITW's input or presence. (Doc. 40, at ¶¶ 2, 14, 15.) ITW urges the Court to keep in mind that a would-be third-party plaintiff bears the burden of justifying an untimely delay in seeking joinder of a third-party defendant. *Delco Wire & Cable Co. v. Keystone Roofing Co.*, 80 F.R.D. 428, 430 (E.D. Pa. 1978).

The *Delco* case has a number of similarities to the present case, as ITW points out. Plaintiff Delco sued defendant Keystone in the Eastern District of Pennsylvania; alongside its answer, Keystone filed complaints against two third-party defendants under Rule 14(a). *Id.* at 429. About six weeks later, Keystone moved to join an additional third-party defendant under the court's analog to this Court's Local Rule 14.1. *Id.* According to that court's rule, Rule 24(a), a "motion by a defendant for leave to bring in a third-party defendant under F. R. Civ. P. 14(a) shall be made within six (6) months from the date of service of the moving defendant's answer to the complaint." *Id.* The court granted Keystone's joinder motion.

Sixteen months later, Keystone moved to add yet another third-party defendant, Reflecto-Barrier. *Id.* at 430. Although the court had no analog to the Middle District's Rule 14.3, which can be used to suspend the six-month limit of Rule 14.1 upon a showing of good cause, the *Delco* court noted that its Rule 24(a) jurisprudence allowed similar exceptions. The court opined that adding Reflecto-Barrier might not have unduly complicated the trial or resulted in serious prejudice to Reflecto-Barrier, but that Keystone's delay in moving to add Reflecto-Barrier was "unwarranted" and "sufficient

5

ground for denying defendant's motion," *Id.* at 431. Keystone argued that it had only just discovered Reflecto-Barrier's possible liability, but the court found this argument inconsistent with the allegations in the plaintiff's complaint that identified facts giving rise to the issues over which Keystone sought to implead Reflecto-Barrier. *Id.* at 430–31; *see also Bethlehem Iron Works, Inc. v. Lewis Indus., Inc.*, No. 94-0752, 1995 WL 366094, at *2 (E.D. Pa. June 19, 1995) (denying as untimely a motion to file a third-party complaint, holding that waiting "almost five months" to ascertain a basis for joinder was not "reasonably diligent").

### (B) Emerson's argument

Opposing ITW's motion to dismiss, Emerson restates its argument from its Rule 14 motion regarding prejudice, complication, delay, and timeliness, and otherwise exhorts the Court not to reconsider its judgment in granting Emerson's motion to join ITW. In support of this exhortation, Emerson relies largely on *Schlegel v. Wilson-Cook Medical, Inc.*, No. 05-0660, 2007 WL 465528 (M.D. Pa. Feb. 8, 2007) (Conner, J.).

In *Schlegel*, the plaintiff, Schlegel, claimed against Wilson-Cook Medical, Inc. for negligence and breach of warranty, filing his complaint on April 1, 2005. *Id.* at *1. Eleven months later, on March 1, 2006, Wilson-Cook filed a third-party complaint naming four third-party defendants. *Id.* One of the third-party defendants, Holy Spirit, moved to dismiss Wilson-Cook's third-party complaint, in part on the grounds that Wilson-Cook did not show good cause to suspend Local Rule 14.1. *Id.* at *2. The court refused to entertain Holy Spirit's suggestion that it was error to permit their joinder, reminding them that "[t]he court granted Wilson-Cook's motion for leave to join third-party defendants with full knowledge of the requirements of Local Rule 14.1." *Id.* at *6 (citing *Pa. Real Estate Inv. Trust v. SPS Techs., Inc.*, No. 94-3154, 1995 WL 687003, at *2 (E.D. Pa. Nov. 20, 1995) (refusing to dismiss a third-party complaint and using substantially the same language as quoted here)).

6

*(C) Analysis*

Despite some similarities between the present case and *Delco*, ITW's arguments are insufficient to warrant dismissal. The similarities are noteworthy, but not enough to carry the day. In *Delco*, the plaintiff's complaint alleged the defendant's "fail[ure] to properly and adequately fasten insulation panels to the metal roof deck and negligently or improperly applying insufficient glue or mastic to insure that the insulation panels would adhere to the metal roof deck." *Delco Wire & Cable Co. v. Keystone Roofing Co.*, 80 F.R.D. 428, 430 (E.D. Pa. 1978). The defendant justified its sixteen-months-late joinder motion based on an argument that plaintiff's "theory of liability, cold adhesive securement of insulation to metal decking[,] was presented at depositions." Id. The court decided not to credit this argument, implicitly stating that the "cold adhesive securement of insulation" theory was mentioned in the complaint. (See id. at 430–31 ("But this seems hard to square with the fairly specific language of paragraph 6(b) of the complaint . . . .")

Likewise, in this case, plaintiffs' complaint made specific reference to problems with the push nut. (*See, e.g.*, Doc. 1, at 16 ¶ 15 ("The subject table saw and the accompanying safety device was designed, manufactured and constructed by defendant 'Emerson' with a 'push nut' design capable of detaching from the accompanying pin without notice.").) Defendants' explanation for the delay seems to be that they wanted to ensure, through the gathering of testimony and the production of expert reports, that the source of the problem really was the push nut; only after so concluding did they begin the process of researching the push-nut manufacturer. It is true that defendants could have undertaken this research before discovery proceeded so far; but this is only one consideration among many on the topic of whether joinder should be permitted. *See Con-Tech Sales Defined Ben. Trust v. Cockerham*, 715 F. Supp. 701, 704 (E.D. Pa. 1989) (citing *Hornsby v. Johns-Manville Corp.*, 96 F.R.D. 367, 369 (E.D. Pa. 1982) ("[A]lthough the motion is not technically timely, and the justification for the tardy filing

7

is not especially persuasive, this court has treated the time limits for filing a motion for leave to file a third-party ocmplaint as mere guidelines, allowing substantial room for the exercise of discretion.").

ITW repeatedly referred to defendants' burden of justifying the delay in an untimely motion for joinder, but Emerson did describe its justification in its motion to permit late joinder (Doc. 27) and its accompanying brief in support (Doc. 27-2). Although the Court's order granting Emerson's motion for late joinder (Doc. 27) was brief and included no analysis, it is safe to presume that Emerson's brief in support, the sufficiency of the justification for late joinder therein, and the history of the case received full consideration before the motion was granted. There is no reason to think that the Court issued its order with anything less than "full knowledge of the requirements of Local Rule 14.1," and ITW's protestations of prejudice and delay do not affect the weight of Emerson's already-made and already-accepted arguments supporting good cause for late joinder. By this measure, ITW's motion to dismiss has already received more discussion than necessary, as a reexamination of the grounds for the Court's order allowing joinder is needless.

Nonetheless, what follows is an application to this case of the four factors regarding suspension of Rule 14.1—(1) possible prejudice to the plaintiff; (2) complication of issues at trial; (3) probability of trial delay; and (4) timeliness of the motion to implead. *O'Mara Enters., Inc. v. Mellon Bank, N.A.*, 101 F.R.D. 668, 670 (W.D. Pa. 1983) (citing *Kopan v. George Washington Univ.*, 67 F.R.D. 36, 38 (D.D.C. 1975); *Judd v. Gen. Motors Corp.*, 65 F.R.D. 612, 615 (M.D. Pa. 1974)).

First, there is no concern about prejudice to the plaintiffs; plaintiffs concurred in defendants' motion to permit late joinder. (Doc. 27-4.) Second, the risk of complication of issues at trial is low. The only additional issue that ITW's joinder presents is the extent to which ITW may be liable to Emerson for indemnification and contribution. Otherwise,

8

the issues of fact and law are identical; any liability of both Emerson and ITW stems from the personal-injury incident that plaintiffs describe and the claims that plaintiffs bring. Third, the extent of trial delay is largely an issue only if it negatively impacts the plaintiff, unless the Court asserts an independent interest in the expeditious movement of its docket. But plaintiffs' concurrence in the motion to permit late joinder implies that they were willing to experience some delay, and the Court, in granting the motion, expressed no concerns about the matter of delay. Significantly from the Court's perspective, denying joinder would run a high risk of burdening the Court's calendar further, as Emerson correctly points out that in the absence of ITW's joinder, an adverse judgment against defendants would obligate them to file a separate claim against ITW for contribution and indemnity, requiring the litigation process to begin again: conferences, scheduling, discovery, and filing of motions, most of it duplicative of the activity in this case.

As for the fourth factor, timeliness, Emerson's joinder motion indisputably came late in the game. With sixteen months between the filing of the complaint and the motion for joinder, the burden was squarely upon Emerson to show good cause why it should be allowed to add a third-party defendant so long after the standard six-month window for joining parties had passed.

Although Emerson's brief did not provide a time line showing when each stage of discovery finished or why it took sixteen months to implead ITW, a review of the docket and its contents provides some explanation. The complaint was filed on October 2, 2008, but the case was first removed to federal court, then transferred from the Eastern to the Middle District of Pennsylvania, which took until February 23, 2009. Only after removal, on March 24, 2009, did the parties hold an initial case-management conference. (*See* Doc. 12 (ordering the conference)). The resultant case-management order (Doc. 17) established October 1, 2009 as a deadline for completion of discovery, but the parties filed a joint motion for extension of discovery deadlines on September 28, 2009 (Doc. 19). In part, the

9

motion for extension of deadlines noted that expert examination of the saw "necessitated additional examinations requiring the shipping of evidence from Pennsylvania to Ohio and resulting in unexpected delay." (*Id.* ¶ 5.) The Court extended the discovery deadline to December 1. (Doc. 20.) On November 30, the parties submitted another joint motion for extension, noting that "the parties have conducted substantial discovery including a site and product inspection, expert review, exchange of documents and subpoenaing of numerous records custodians," but stating that "additional written discovery and depositions are required." (Doc. 25, at 3 ¶ 6.) The Court once again pushed the discovery deadline back, this time to January 4, 2010. (Doc. 26.)

A review of this case essentially shows that progress has been slow. There were more than six months between the filing of the complaint and the first case-management conference; and discovery involved the production of large volumes of business records and medicals records, entailing unexpected delay on the way. Before defendants could implead ITW, they needed expert examination of the saw, completed reports from the experts, time to compile the relevant business records, and time to sort through them to find out the manufacturer of the allegedly defective push nut. Sixteen months is a long time to elapse between initial filing of a complaint and impleader of a third-party defendant, but on the facts of this case, the liberal construction that courts are to give Rule 14 dictates that untimeliness alone is not sufficient to forbid Emerson from impleading ITW.

Finally, ITW's claims of prejudice are simply not relevant to the outcome here, as prejudice to the third-party defendant is not a factor in the modern analysis under Local Rules 14.1 and 14.3. *Compare Con-Tech Sales Defined Ben. Trust v. Cockerham*, 715 F. Supp. 701, 703 (E.D. Pa. 1989) (citing *O'Mara*, 101 F.R.D. at 670) (considering the four factors listed above), *and Judd v. Gen. Motors Corp.*, 65 F.R.D. 612, 615 (M.D. Pa. 1974) (considering timeliness of the motion to join, prejudice to the plaintiff, and whether

joinder would avoid "circuity of action"), *with Oberholtzer v. Scranton*, 59 F.R.D. 572, 574 (E.D. Pa. 1973) (considering excusability of delay, prejudice to the third-party defendant, and delay or complication of the trial). Also noteworthy is the motion for extension of deadlines that plaintiffs and defendants jointly filed on March 8, 2010, just after defendants' motion to implead, which the parties filed specifically to allow time for ITW to prepare its defense. (Doc. 28, ¶ 3.) Moreover, ITW's liability, if any, is contingent upon an outcome holding Emerson liable, since Emerson has impleaded ITW solely on the basis of contribution and indemnity. Since Emerson has had every incentive to defend vigorously against the Crowders' claims and Emerson and ITW's liability turns on the same facts and law, Emerson has been representing essentially the same interests as ITW's in this case. ITW may be inconvenienced by its need to join this litigation relatively late in the process, but its rights are not seriously prejudiced.

**IV. Conclusion**

Defendants previously having shown sufficiently good cause for late joinder of ITW as a third-party defendant and there appearing no reason to vacate the order granting ITW's joinder, it is recommended that defendant's motion to dismiss be DENIED.

s/ William T. Prince
William T. Prince
United States Magistrate Judge

October 19, 2010